Kirsten A. Worley, Bar No. 222513
Worley Law, P.C.
26632 Towne Centre Drive, Suite 300
Foothill Ranch, CA  92610
Telephone:  949-420-3706
Facsimile:   949-420-3707
Email: kw@wlawcorp.com

Attorneys for Plaintiff
ALLIED WORLD INSURANCE COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIED WORLD INSURANCE COMPANY, a New Hampshire corporation,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL METALS CORPORATION, a California corporation; KEITH COE, an individual,<br><br>Defendants. | Case No. **'15CV121  W    JMA**<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT OF INDEMNITY;**<br><br>**(2) STATUTORY REIMBURSEMENT;**<br><br>**(3) SPECIFIC PERFORMANCE;**<br><br>**(4) QUIA TIMET;**<br><br>**(5) SECURED PARTY ACTION FOR TURNOVER, POSSESSION AND DELIVERY OF COLLATERAL; AND**<br><br>**(6) DECLARATORY RELIEF** |

COMES NOW Plaintiff ALLIED WORLD INSURANCE COMPANY ("ALLIED WORLD") and for causes of action against the Defendants, and each of them, complains and alleges as follows:

///

///

///

COMPLAINT

## JURISDICTION AND VENUE

1. This court has jurisdiction and venue. These proceedings are instituted pursuant to the provisions of 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity exists among the parties. All Defendants reside, and/or are domiciled in this District, or have their principal place of business in this District. Venue is proper in the United States District Court, Southern District of California.

## GENERAL ALLEGATIONS

2. Plaintiff is, and at all times mentioned herein was, a corporation organized under the laws of the State of New Hampshire, and was at all times mentioned herein qualified to do business in California. Plaintiff is a subsidiary and/or affiliate of Allied World Assurance Company. Plaintiff is engaged in the business of, among other things, issuing payment and performance surety bonds for the construction industry.

3. At all times mentioned herein, Plaintiff was duly qualified to conduct business as a surety within the State of California and to engage in the activity described in this Complaint.

4. Plaintiff is informed and believes and on that basis alleges that defendant GLOBAL METALS CORPORATION ("GMC") was at all times mentioned herein a corporation organized under the laws of the State of California. GMC was engaged in the business of public and private works construction. Plaintiff is informed and believes and on that basis alleges that GMC's residence and principal place of business was and is located at 11403 West Bernardo Court, Suite 100, San Diego, California 92127.

5. Plaintiff is informed and believes and on that basis alleges that defendant KEITH COE ("COE") is, and at all times mentioned herein was, a citizen of the State of California residing in the County of San Diego in Rancho Santa Fe, California, and is subject to the jurisdiction of this Court.

# FIRST CAUSE OF ACTION
## BREACH OF INDEMNITY AGREEMENT
### (Against All Defendants)

6. Plaintiff hereby incorporates by reference Paragraphs 1 through 6 as though fully set forth herein.

7. On or about October 29, 2013, each of the Defendants executed a certain written Agreement of Indemnity (the "Indemnity Agreement"), as Indemnitors, in favor of Plaintiff ALLIED WORLD. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit 1** and is incorporated by this reference as though fully set forth herein.

8. The Indemnity Agreement provides that Defendants, and each of them, agreed to jointly and severally indemnify and hold Plaintiff harmless from and against all losses, costs, fees and expenses incurred by Plaintiff on all surety bonds issued for or at the request of any of the Indemnitors, in pertinent part as follows:

> Each Indemnitor hereby agrees and covenants with the Surety as follows:
>
> 3.2  INDEMNITY — at all times jointly and severally to indemnify and to hold the Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay the Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not the Surety has actually made any payment thereon as of such Due Date.

(Exhibit 1, p. 3.)

9. The Indemnity Agreement further provides that Defendants are required to provide collateral security to ALLIED WORLD upon demand to hold ALLIED WORLD harmless from and against all loss, costs, fees and expenses in pertinent part as follows:

> 3.3  DEPOSIT OF FUNDS — (a) to deposit with the Surety as collateral, by the Due Date and after receipt of the Surety's written demand, the sum equal to an amount

determined by the Surety, to cover liability for Loss covered by Section 3.2, as determined by the Surety. At Surety's sole option, such collateral will be in addition to and not in lieu of any other collateral previously provided to the Surety. Further, if an Event of Default (as defined in this Agreement below) has occurred, the Surety will be entitled to demand that the Indemnitors place with Surety funds equal to the aggregate penal sum of all then- outstanding Bonds as such sum is determined by the Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds).

(b)   If Indemnitors fail to pay in full the amount demanded pursuant to this Agreement on the Due Date, lndemnitors will pay Interest on such overdue amount from the Due Date up to the date of actual payment to the Surety.

(c)   Surety will have the right to use the collateral, or any part thereof, in payment or settlement of any liability, Loss or expense for which the Indemnitors are or would be obligated to indemnify the Surety under the terms of this Agreement. The Indemnitors will be entitled to the refund of any unused portion of the deposit upon termination of the liability of the Surety on all Bonds and the termination of Indemnitors' performance of all obligations to the Surety under the terms of this Agreement.

(d)   Indemnitors acknowledge that the failure to deposit with the Surety, by the Due Date, the sum demanded by the Surety as collateral security will cause the Surety irreparable harm for which the Surety has no adequate remedy at law. Indemnitors agree that the Surety will be entitled to injunctive relief for specific performance of the Indemnitors' obligation to deposit with the Surety the sum demanded as collateral security and hereby waive any claims or defenses to the contrary and the posting of any bonds by the Surety in connection therewith.

(Exhibit 1, p. 3.)

10.   The Indemnity Agreement further provides that Defendants, and each of them, agreed that ALLIED WORLD has the right, in its sole discretion, to settle, compromise, prosecute or defend any claim on the bonds, in pertinent part as follows:

> 4.1   SETTLEMENTS.   The Surety is granted the option to adjust, settle or compromise any Claim, demand, suit or judgment with respect to any Bond in

- 4 -                                                           COMPLAINT

> Surety's sole discretion. An Indemnitor may request the Surety to litigate such Claim or demand, or to defend such suit, or to appeal from such judgment, but Surety will be under no obligation to do so unless (i) Surety is provided with an opinion of Indemnitor's counsel which indicates that such suit or appeal has reasonable basis in law, and (ii) the Indemnitor deposits with the Surety, at the time of such request, cash or collateral satisfactory to the Surety to be used to pay any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

(Exhibit 1, pp. 5-6.)

11. In reliance upon the Indemnitors' promises in the Indemnity Agreement, among other things, ALLIED WORLD issued the following surety bonds ("Bonds"), among others, for GMC as bond principal on the following bonded contracts (the "Bonded Contracts"): A Subcontract Performance Bond and a Subcontract Payment Bond each identified by Bond No. A00000029 and each in the amount of $1,533,000 for GMC as Bond principal and Kiewit Building Group, Inc. as obligee under the Bonds (the "Kiewit Bonds").  Additionally, ALLIED WORLD initially issued a Performance Bond and a Subcontractor Labor & Material Payment Bond each in the amount of $1,031,860.00, identified by Bond No. A00000031 for GMC as principal under the Bond and The Whiting-Turner Contracting Company ("WT") as obligee (the "WT Bonds").  However, WT subsequently rejected and returned the original WT Bonds to ALLIED WORLD. WT demanded replacement bonds for the WT Bonds. GMC never procured replacement bonds from another surety.  Nevertheless, WT alleges, and ALLIED WORLD disputes, that that WT Bonds are in effect.  WT has filed suit against ALLIED WORLD in the District Court for Clark County, Nevada, Case No. A-14-710665-C (the "WT Action").  GMC is liable for all of ALLIED WORLD's losses, fees, costs and expenses with respect to the WT Bonds and the WT Action under the Indemnity Agreement as the WT Bonds were issued at the request of GMC.

///

12. True and correct copies of the Bonds including the WT Bonds are collectively attached hereto as **Exhibit 2**.

13. GMC breached one or more Bonded Contracts, resulting in one or more claims against the payment Bonds by subcontractors, suppliers and laborers, and claims against the performance Bonds by the owners. As a result thereof, Plaintiff ALLIED WORLD has suffered damages in the nature of Bond losses, attorneys' fees, costs and expenses, all of which continue to increase.

14. To date, ALLIED WORLD has made payments on Bonds totaling $322,174.64 to a subcontractor, Azteca Steel, Inc. pursuant to the payment Bond claim filed by Azteca Steel, Inc.

15. Additionally, ALLIED WORLD has incurred $19,157.64 in fees, costs and expenses through January 2, 2015, including consultants' and attorneys' fees to assist in defense of claims on the Bonds and investigation and prosecution of indemnity matters and in-house attorney costs. As a result thereof, ALLIED WORLD's losses, fees, costs and expenses total at least $341,332.02 as of January 2, 2015, for which the Defendants are liable to ALLIED WORLD pursuant to the terms of the Indemnity Agreement.

16. All payments were made by ALLIED WORLD to Bond claimants after a full and complete investigation by ALLIED WORLD regarding the claims and requesting backup documentation from the claimants. ALLIED WORLD only paid the amount that ALLIED believed was due and owing.

17. Additionally, ALLIED WORLD provided notice to Defendants of each of the claims on the Bonds and requested information and defenses from the Defendants prior to such payment; however the Defendants failed to furnish any such requested information, in breach of paragraph 3.7 of the Indemnity Agreement, which provides in pertinent part as follows:

> 3.7 COOPERATION WITH INVESTIGATION — to promptly, upon receipt of a notice from the Surety regarding the Surety's investigation of a Claim, or upon

> receipt of a request for additional information from the Surety regarding any Claim, provide the Surety with access to full, complete, accurate and up to date information regarding Indemnitor's position regarding the validity or defenses to the Claim. If the Indemnitor's attorney possesses information concerning the Claim, Indemnitor will instruct its attorney to cooperate with the Surety and Indemnitor will provide the Surety with access to said attorney and information.

(Exhibit 1, p. 5.)

18. ALLIED WORLD requested access to GMC's books and records pursuant to the terms of the Indemnity Agreement but GMC further refused such books and records inspection, in breach of paragraph 3.6 of the Indemnity Agreement. Not only did GMC fail and refuse the books and records inspection, but GMC falsified an alleged letter from its financial institution and transmitted it to ALLIED WORLD.

19. Further, ALLIED WORLD repeatedly requested that the Defendants furnish collateral security to ALLIED WORLD pursuant to paragraph 3.3; however, the Defendants failed and refused to do so upon ALLIED WORLD's demand and therefore breached the Indemnity Agreement. Pursuant to paragraph 3.3 of the Indemnity Agreement, upon the Defendants' failure to furnish collateral security to ALLIED WORLD, the Defendants lost any and all defenses to ALLIED WORLD's claims under the Indemnity Agreement as set forth in paragraph 3.3(d) as follows:

> 3.3(d)   Indemnitors acknowledge that the failure to deposit with the Surety, by the Due Date, the sum demanded by the Surety as collateral security will cause the Surety irreparable harm for which the Surety has no adequate remedy at law. Indemnitors agree that the Surety will be entitled to injunctive relief for specific performance of the Indemnitors' obligation to deposit with the Surety the sum demanded as collateral security and hereby waive any claims or defenses to the contrary and the posting of any bonds by the Surety in connection therewith.

(Exhibit 1, p. 3.)

20. In addition to the Bond claims which ALLIED WORLD has already paid, ALLIED WORLD has received the following additional payment Bond claims totaling another $615,057.62 in exposure to ALLIED WORLD in and under the payment Bonds:

| Claimant Name | Initial Demand |
| --- | ---: |
| Orlando C. Fuertez, PE Inc. | 13,365 |
| Mesa Fastener, Inc. | 3,852.44 |
| Totten Tubes, Inc. | 1,262.49 |
| Maxim Crane Works | 24,144.54 |
| Red Star Fence Company | 99,450 |
| Agate Steel | 253,948.61 |
| Curtis Steel Co., Inc. | 219,034.54 |

21. Further, as noted above in paragraph 11, ALLIED WORLD is exposed to losses, fees, costs and expense on account of the WT Action, all of which the Defendants remain liable.

22. In addition, ALLIED WORLD is in receipt of correspondence dated January 7, 2015 from Kiewit by which Kiewit stated that GMC is in breach of the Bonded Contract covered by the Kiewit Bond, a true and correct copy of which is attached hereto as **Exhibit 3**. Pursuant to Kiewit's January 7, 2015, letter, GMC had five days therefrom to cure such defaults or Kiewit would terminate the Bonded Contract and demand that ALLIED WORLD perform on the performance Bond. Therefore, ALLIED WORLD is exposed to losses, costs and expenses in connection with the Kiewit performance Bond, up to the $1,533,000.00 penal sum of the performance Bond, in an amount subject to proof at trial.

23. Nothing herein shall be deemed an admission of liability by ALLIED WORLD as to any and all outstanding Bond claims, for which ALLIED WORLD reserves all rights and defenses. ALLIED WORLD continues to investigate all outstanding claims on the Bonds.

24. Plaintiff has performed all of the terms, covenants and conditions on its part to be performed under the terms of the Indemnity Agreement.

25. The Defendants, and each of them, have breached the Indemnity Agreement and failed to comply with Plaintiff's request for reimbursement of all costs, damages, attorneys' fees and expenses resulting from claims made on the Bonds.

WHEREFORE, as set forth below, Plaintiff prays for judgment against the Defendants, and each of them, in an amount of at least $341,332.02, subject to proof at trial, plus additional attorneys' fees, costs and any other additional expenses to be incurred as a result of Defendants' breach of the Indemnity Agreement.

## SECOND CAUSE OF ACTION
## STATUTORY INDEMNITY
### (Against Defendant GMC)

26. Plaintiff incorporates herein the allegation of Paragraphs 1 through 25, inclusive, as though fully set forth herein.

27. As a consequence of having been named as principal upon the Bonds, Defendant GMC became, and is now, obligated to reimburse Plaintiff for any amount or amounts Plaintiff has disbursed and will disburse pursuant to the terms of the Bonds, including necessary costs, expenses and fees in accordance with the provisions of California Civil Code § 2847.

28. To date, ALLIED WORLD has made payments on the Bonds totaling $322,174.64 to a subcontractor, Azteca Steel, Inc., pursuant to the payment Bond claim filed by Azteca Steel, Inc. Additionally, ALLIED WORLD has incurred $19,157.64 in fees, costs and expenses through January 2, 2015, including consultants' and attorneys' fees to assist in defense of claims on the Bonds and investigation and prosecution of indemnity matters and in-house attorney costs. As a result thereof, ALLIED WORLD's losses, fees, costs and expenses total at least $341,332.02 as of January 2, 2015.

///

29. In addition to the Bond claims which ALLIED WORLD has already paid, ALLIED WORLD has received additional payment Bond claims totaling another $615,057.62 in exposure to ALLIED WORLD in and under the payment Bonds as set forth in paragraph 20 above. Further, as noted above in paragraph 11 above, ALLIED WORLD is exposed to losses, fees, costs and expense on account of the WT Action. In addition, as noted above in paragraph 22 above, ALLIED WORLD is in receipt of the performance Bond claim from Kiewit and is therefore exposed to additional fees, costs and expense on account of the Kiewit bond claim. Nothing herein shall be deemed an admission of liability by ALLIED WORLD as to any and all outstanding Bond claims, for which ALLIED WORLD reserves all rights and defenses. ALLIED WORLD continues to investigate all outstanding claims on the Bonds.

WHEREFORE, as set forth herein below, Plaintiff prays for judgment against defendant GMC in an amount according to proof in excess of $341,332.02, plus additional attorneys' fees, costs and any other additional amounts disbursed or to be disbursed pursuant to the terms of the Bonds.

## THIRD CAUSE OF ACTION
## SPECIFIC PERFORMANCE
### (Against All Defendants)

30. Plaintiff incorporates herein the allegation of Paragraphs 1 through 29, inclusive, as though fully set forth herein.

31. The Defendants, and each of them, entered into the Indemnity Agreement in consideration of the execution of the Bonds, among other things.

32. GMC breached one or more Bonded Contracts, resulting in one or more claims against the payment Bonds by subcontractors, suppliers and laborers, and claims against the performance Bonds by the public owners. As a result thereof, Plaintiff ALLIED WORLD has suffered damages in the nature of Bond losses, attorneys' fees, costs and expenses, all of which continue to increase.

33. To date, ALLIED WORLD has made payments on the Bonds totaling $322,174.64 to a subcontractor, Azteca Steel, Inc., pursuant to the payment Bond claim filed by Azteca Steel, Inc. Additionally, ALLIED WORLD has incurred $19,157.64 in fees, costs and expenses through January 2, 2015, including consultants' and attorneys' fees to assist in defense of claims on the Bonds and investigation and prosecution of indemnity matters. As a result thereof, ALLIED WORLD's losses, fees, costs and expenses total at least $341,332.02 as of January 2, 2015.

34. In addition to the Bond claims which ALLIED WORLD has already paid, ALLIED WORLD has received additional payment Bond claims totaling another $615,057.62 in exposure to ALLIED WORLD in and under the payment Bonds as set forth in paragraph 20 above. Further, as noted above in paragraph 11 above, ALLIED WORLD is exposed to losses, fees, costs and expense on account of the WT Action. In addition, as noted above in paragraph 22 above, ALLIED WORLD is in receipt of the performance Bond claim from Kiewit and is therefore exposed to additional fees, costs and expense on account of the Kiewit bond claim. Nothing herein shall be deemed an admission of liability by ALLIED WORLD as to any and all outstanding Bond claims, for which ALLIED WORLD reserves all rights and defenses. ALLIED WORLD continues to investigate all outstanding claims on the Bonds.

35. Pursuant to the express terms of the Indemnity Agreement, including without limitation as set forth in paragraphs 3.2 and 3.3, Defendants are obligated to hold ALLIED WORLD harmless from and against all loss. ALLIED WORLD is entitled to specific performance by the Defendants of this obligation.

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, in an amount according to proof in excess of $341,332.02, plus additional attorneys' fees, costs and any other additional amounts disbursed or to be disbursed pursuant to the terms of the Bonds, and Plaintiff prays for specific

performance of the Defendants' obligation to collateralize Plaintiff from and against any and all future losses, costs, fees and expenses.

## FOURTH CAUSE OF ACTION
## QUIA TIMET
## (Against All Defendants)

36. Plaintiff incorporates herein the allegation of Paragraphs 1 through 35, inclusive, as though fully set forth herein.

37. Defendants, and each of them, are obligated under the doctrine of Quia Timet to post collateral security to Plaintiff for all losses and expenses to be incurred as a consequence of the Bonds issued by Plaintiff on behalf of Defendants, and each of them.

38. Plaintiff believes that Defendants will attempt to avoid their obligations to indemnify and hold Plaintiff harmless under the terms of the Indemnity Agreement by transferring and conveying their assets to satisfy obligations other than those covered by the Bonds or otherwise included within the scope of the Indemnity Agreement.

39. Plaintiff has no adequate remedy at law for the injuries currently being suffered. If said Defendants are not immediately enjoined from transferring their assets, the assets will be disposed of permanently, and said Defendants will render themselves insolvent, all to the prejudice of Plaintiff.

40. As a proximate result of the conduct of Defendants, and each of them, Plaintiff has been or will be damaged so long as said Defendants are able to circumvent their obligations to Plaintiff under the Indemnity Agreement by transferring assets.

41. Plaintiff is entitled to receive a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining Defendants, and each of them, as well as their agents, servants, employees, and all persons acting under, in concert with, or for them from further transferring assets absent further

court order.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein below.

## FIFTH CAUSE OF ACTION

## SECURED PARTY ACTION FOR TURNOVER, POSSESSION AND DELIVERY OF COLLATERAL

**(Against all Defendants)**

42. Plaintiff incorporates herein the allegation of Paragraphs 1 through 41, inclusive, as though fully set forth herein.

43. Pursuant to paragraph 7.13 of the Indemnity Agreement, the Indemnity Agreement is a security agreement pursuant to Article 9 of the Uniform Commercial Code as adopted in California pursuant to the California Commercial Code.

44. Based upon the Indemnity Agreement, ALLIED WORLD filed the Indemnity Agreement as a UCC Financing Statement on or about June 12, 2014, a true and correct copy of which is attached hereto as **Exhibit 4** (the "UCC Financing Statement").

45. The UCC Financing Statement secures ALLIED WORLD in all of the following collateral of the Defendants (the "Collateral"):

> (a) all of the Debtors' rights, title and interest in, and arising in any manner out of, all contracts referred to in the surety bonds issued by Secured Party (the "Bonds") (whether or not such contracts are bonded), or in, or arising in any manner out of the Bonds; (b) any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds including, but not limited to, all percentages retained, progress payments, deferred payments, compensation for extra work and proceeds of damage claims; (c) all of the Debtors' rights, title and interest in and to all machinery, supplies, equipment, plant, tools and materials of every nature and description which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials

which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (d) all proprietary systems, software or any other assets of a similar nature which are employed by the Debtors in connection with any and all contractual work referred to in the Bonds; (e) all of the Debtors' rights, title and interest in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (f) all actions, causes of actions, claims and demands whatsoever which the Debtors may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; and (g) all proceeds of the foregoing.

46. As a result of the Defendants' breach and default under the Indemnity Agreement, Plaintiff, as secured party under the security agreement and UCC Financing Statement, is entitled to take possession of the Collateral, and Plaintiff is further entitled to all orders from this Court in aid of its secured party rights including turnover and delivery orders requiring the Defendants to assemble the Collateral and to deliver it to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein below.

## SIXTH CAUSE OF ACTION
## DECLARATORY RELIEF
### (Against All Defendants)

47. Plaintiff incorporates herein the allegation of Paragraphs 1 through 46, inclusive, as though fully set forth herein.

48. An actual controversy has arisen and now exists between Plaintiff and the Defendants, and each of them, in that Plaintiff contends and Defendants deny that pursuant to the aforementioned Indemnity Agreement, Defendants are obligated to indemnify Plaintiff for the losses, costs, fees and expenses related to any Bonds issued to GMC.

49. Plaintiff desires a judicial determination of the respective rights and duties of Plaintiff and Defendants, and each of them, with respect to the Indemnity Agreement.  In particular, Plaintiff desires a declaration that as a consequence of having executed the Indemnity Agreement, the Defendants, and each of them, are obligated to indemnify Plaintiff for the losses, costs, fees and expenses incurred by Plaintiff on the Bonds and interest accruing thereon.

WHEREFORE, Plaintiff ALLIED WORLD prays for judgment as follows:

1. On the First Cause of Action for damages in an amount in excess of $341,332.02, plus additional losses, fees, costs and any other additional expenses through trial, against all Defendants;

2. On the Second Cause of Action for damages in an amount in excess of $341,332.02, plus additional losses, fees, costs and any other additional expenses through trial, against Defendant GMC;

3. On the Third Cause of Action, Plaintiff prays for an order of specific performance requiring the Defendants to post collateral in an amount in excess of $1,000,000 or in the amount of Plaintiff's exposure to losses, fees, costs and expenses on all Bonds at time of judgment;

4. On the Fourth Cause of Action, Plaintiff prays for a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants from transferring assets and/or requiring the Defendants to post collateral in an amount in excess of $1,000,000 or in the amount sufficient to protect Plaintiff from any losses on its Bonds, attorney fees, expenses or costs at the time of the Court's ruling;

5. On the Fifth Cause of Action, for an order in aid of Plaintiff's secured party rights, requiring the Defendants to assemble, turn over, and deliver all of the Collateral to Plaintiff;

6. On the Sixth Cause of Action, a declaration of the rights of the parties to the Indemnity Agreement as contended by Plaintiff;

7. For Plaintiff's costs of suit herein;

8. For attorneys' fees incurred by Plaintiff; and

9. For such other and further relief as the Court deems just and proper.

Dated: January 20, 2015    Worley Law, P.C.


               By: /s/ Kirsten A. Worley
               Kirsten A. Worley
               Attorneys for Plaintiff
               ALLIED WORLD INSURANCE COMPANY